1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   U.S. LEGAL SUPPORT, INC.,          No.  CIV. S-13-01770 LKK/AC
     A Texas corporation,
12
                    Plaintiff,
13                                       **ORDER**

         v.
14
     AMEEN HOFIONI, an individual,
15   MORGAN ALBANESE, an
     individual, THE LIT GROUP,
16   a Nevada corporation,
     HUTCHINGS COURT REPORTERS,
17   LLC, a California
     corporation, LITIGATION
18   SERVICES, a Nevada
     corporation,
19
                    Defendants.
20

21

22       This matter concerns a trade secrets dispute between

23   Plaintiff U.S. Legal Support, Inc. and Defendants Ameen Hofioni,

24   Morgan Albanese, The LIT Group, Hutchings Court Reporters, LLC,

25   and Litigation Services. Plaintiff alleges that Hofioni and

26   Albanese, its former employees, misappropriated certain trade

27   secrets and other confidential information, and are using this

28   information for the benefit of their new employer, The LIT Group,

                                    1

1  and its affiliated entities, Hutchings and Litigation Services,[1]

2  and to Plaintiff's consequent detriment.

3      The operative complaint alleges eight causes of action under

4  California law. Defendants now move to dismiss under Fed. R. Civ.

5  P. 12(b)(6).

6      Defendants' motion came on for hearing on November 18, 2013.

7  For the reasons set forth below, their motion will be granted in

8  part and denied in part.

9  **I.  BACKGROUND**

10     **A. Factual Background**

11     Plaintiff is one of the country's largest providers of court

12  reporting, record retrieval, and other legal support serves.

13  (Complaint ¶ 17.) The firm has 40 offices throughout the United

14  States, including offices in San Francisco, Sacramento, and

15  Fresno (collectively, its Northern California region). (Id.

16  ¶¶ 17, 18, 43.)

17     Plaintiff "aggregat[es] and creat[es] detailed non-public

18  data derived from [its] business relationships with its potential

19  and current customers[.]" (Id. ¶ 24.) It uses this data to:

20             (a) Identify those persons within customer
21          organizations responsible for procuring and
              ordering U.S. Legal Support's services,
22          including secretaries, paralegals, and at
              times associate attorneys, whose identities
23          are not readily discernible from public
              information;
24

25             (b) Track and anticipate customer needs for
            U.S. Legal Support's services based on non-
26

_____

27  [1] The LIT Group, Hutchings Court Reporters, LLC, and Litigation
    Services are collectively referred to herein as the "Entity
    Defendants."

28

2

public information concerning (i) the customer's historical usage of U.S. Legal Support's services; and (ii) customers' upcoming projects;

(c)     Track U.S. Legal Support revenue by customer, including trends in the usage of U.S. Legal Support's services, which data includes detailed metrics such as (i) the customer; (ii) the customer contact within the organization that ordered the work; (iii) date of service/projected date of service; (iv) amount paid for service; (v) the revenue generated on a per job basis; (vi) the monthly revenue generated by customer for the month; and (vii) dollar and percentage changes in historical to present use of U.S. Legal Support's services; and

(d)     Identify each U.S. sales representative and track his or her productivity as measured by depositions and records ordered.   This data is tracked by week, month, and year. (Complaint ¶ 24.)

The Complaint terms items (a) – (d) "Confidential Information."

Plaintiff avers that it has spent years and millions of dollars obtaining, analyzing, and maintaining the confidentiality of, this information; that it is of great value to the company; and that its possession would give any competitor an unfair competitive advantage. (Id. ¶¶ 26, 27, 30-32.) Plaintiff protects its Confidential Information by restricting access to, and password-protecting, its computers and documents, and by requiring employees to sign non-disclosure agreements and comply with confidentiality policies. (Id. ¶¶ 33, 34.)

Plaintiff also identifies specific Microsoft Excel and PDF files which contain non-public data about Plaintiff's customers and sales representatives as its "confidential, proprietary, and

1   trade secret information."[2] (Id. ¶¶ 59, 60.) These files include:

2           (a) An Excel file, entitled "CR – Reporting Sales – TTM

3           2.2013 – Ameen Hofioni.xlsx," which identifies every

4           law firm and every employee at each law firm that

5           ordered Plaintiff's services in Defendant Hofioni's

6           territory, as well as sales and revenue trends for each

7           of these customers. (Id. ¶ 60.)

8

9           (b) Another Excel file, "AMEEN Top 25 – December

10          2012.xlsx," identifies those customers in Hofioni's

11          territory whose purchases of Plaintiff's services

12          increased and decreased the most in 2012. (Id.)

13

14          (c) A PDF file, entitled "R_PA_SC00.pdf," also known as

15          a "Sales Commission Report," identifies "monthly U.S.

16          Legal Support revenue by firm, who within the firm

17          purchased U.S. Legal Support's products and services,

18          and the lawsuit for which the services were purchased."

19          (Id.)

20

21          (d) A second PDF file, entitled "R_PA_SC00.pdf," also

22          known as a "Calendar Analysis Report" or "Depos That

23          Went Forward Report," identifies customers in the

24          Northern California region who are actively setting

25          depositions. (Id.)

26

27   [2] The Complaint uses this phrase repeatedly to characterize the information at issue. The legal significance of this phrase for

28   Plaintiff's claims is addressed below.

1

2          (e) A third Excel file, "RR Incoming Orders by Sales

3          Rep – 4.22 – 4.28.2013.xlsx" identifies Plaintiff's

4          sales representatives nationally and the volume of

5          orders he or she produced. (Id.)

6   The Complaint terms items (a) – (e) "Confidential Documents."[3]

7          Defendant Hofioni worked for Plaintiff from June 1, 2009

8   until July 18, 2013. At the time of his departure, he was

9   Director of Business Development, responsible for the Northern

10  California region. (Id. ¶¶ 11, 43.) Defendant Albanese worked for

11  Plaintiff from August 20, 2012 to July 19, 2013; Hofioni was her

12  supervisor; when she departed, she was a Sales Assistant. (Id.

13  ¶ 12.) Both employees had access to Plaintiff's Confidential

14  Information. (Id. ¶ 46.)

15         Plaintiff's January 2013 employee handbook provides that

16  "[t]he protection of confidential business information and trade

17  secrets is vital to the interests of U.S. Legal Support, Inc.[,]"

18  and defines "confidential information" as including customer

19  lists, customer preferences, financial information, personnel

20  information, and trade secrets. (Id. ¶ 41.) Hofioni and Albanese

21  both signed forms acknowledging receipt of the handbook. (Id.

22  ¶ 38.) Hofioni and Albanese variously signed other confidential

23  information agreements and non-disclosure agreements. (Id. ¶¶ 38-

24  41.)

25  _____

    [3] Plaintiff's use of the defined terms "Confidential Information"
26  and "Confidential Documents" to refer to trade secret
    information, and "confidential information" to refer to non-trade
27  secret information engenders some confusion. Plaintiff may wish
    to use more distinct terms in any amended complaint.
28

The Complaint alleges the following actions by Hofioni and Albansese:

- On October 2, 2012, Hofioni reported that his laptop computer was stolen; he was subsequently issued a replacement laptop. (Id. ¶ 72.) Hofioni returned a single laptop to Plaintiff upon his resignation; this laptop appears not to have been used after October 2, 2012, though Hofioni claims to have used a laptop after this date. (Id. ¶ 73.) Plaintiff alleges, on information and belief, that Hofioni kept the second laptop that he was issued. (Id. ¶ 74.)

- Between April and July 2013, Hofioni and Albanese "covertly accessed and retained" the Confidential Documents listed above. (Id. ¶ 60.)

- Between April and July 2013, Hofioni sent 25 email messages from his work email address to his personal email address, many with attachments containing Plaintiff's "confidential, proprietary, and trade secret information." (Id. ¶ 57.)

- On two days in April 2013, Hofioni sent 20 email messages from his work email address to Albanese's personal email address, all with attachments containing Plaintiff's "confidential, proprietary, and trade secret information." (Id. ¶ 58.)

- On April 22, 2013, Hofioni was subject to a "corrective action" due to inappropriate behavior towards a co-worker. (Id. ¶ 47.) That same day, he requested Plaintiff's rates for the cities and regions in

California. (Id. ¶ 61.) There was no legitimate
business purpose for this request. (Id. ¶ 62.)

- In April 2013, Hofioni also requested a list of all
  court reporters used by Plaintiff's San Francisco
  office. (Id. ¶ 63.) There was no legitimate business
  purpose for this request. (Id.)

- On information and belief, Hofioni logged into a fellow
  employee's account and recorded all of her customer
  contact information, retaining it after his
  resignation. Plaintiff believes that Hofioni is using
  this data to unfairly compete with it. (Id. ¶ 83.)

Plaintiff contends that these actions violated its
confidentiality policies and the agreements signed by Hofioni and
Albanese. (Id. ¶ 77.)

On July 19, 2013, Plaintiff discovered that Hofioni would be
joining The LIT Group and its related entities as the Regional
President for Northern California Sales, while Albanese would be
joining as the Client Services Manager. (Id. ¶ 68.) According to
Plaintiff, the Entity Defendants are its direct competitors, and
"did not have a presence in Northern California prior to the
individual defendants misappropriating [Plaintiff's] information
and beginning work for [the Entity Defendants]." (Id. ¶ 3, 68.)

Plaintiff alleges that Hofioni and Albanese, acting on
behalf of the Entity Defendants, have solicited Plaintiff's
employees and customers, and interfered with Plaintiff's business
relationships with its customers. (Id. ¶¶ 78, 80, 82-85, 93.)
Plaintiff also alleges that Hofioni has sent its customers
marketing materials from the Entity Defendants which "incorporate

7

information that is nearly identical to that of U.S. Legal Support's business plans and related marketing materials." (Id. ¶ 142.)

Finally, Plaintiff alleges that Hofioni fraudulently obtained thousands of dollars from it, specifically by:

- Using his corporate credit card to charge items and send gifts to Plaintiff's customers in the period leading up to his resignation, in order to engender goodwill when he joined the Entity Defendants. (Id. ¶¶ 89, 92.) For example, two weeks before he resigned, he sent chocolate-covered strawberries to Plaintiff's customers, accompanied by a note providing, "Thanks so much for always allowing me to be your Court Reporting guy! I have always valued the relationship and would like nothing more than to continue to serve your Firm." (Id. ¶ 90.)

On information and belief, submitting expense reports for gift card purchases that he kept for his own benefit. For example, in early May, Hofioni spent over $2000 on gift cards at a Safeway store; Plaintiff is informed and believes that he did not distribute these to the customers that he listed on his expense reports, but instead kept some or all of the cards for himself. (Id. ¶ 91.)

**B. Procedural Background**

Plaintiff commenced this action on August 26, 2013. Four days later, Plaintiff filed a motion for a temporary restraining order, an order to show cause regarding issuance of a preliminary

8

1   injunction, an order to preserve evidence, and an order for

2   expedited discovery. (ECF No. 5.) Ultimately, these motions were

3   resolved through a stipulated preliminary injunction and order

4   for expedited discovery, entered by the court on September 24,

5   2013. (ECF No. 24)

6       The operative complaint pleads eight causes of action:

7   (i) misappropriation of trade secrets under California's

8   codification of the Uniform Trade Secrets Act, Cal. Civ. Code

9   §§ 3426-3426.11; (ii) breach of contract; (iii) breach of the

10   duty of loyalty; (iv) breach of the duty of confidence;

11   (v) statutory unfair competition, under Cal. Bus. & Prof. Code

12   § 17200; (vi) conversion; (vii) fraud; and (viii) conspiracy. The

13   second, third, fourth, and seventh causes of action are alleged

14   solely against Hofioni and Albanese; the rest are alleged against

15   all Defendants. Each cause of action is pled under California

16   state law. (ECF No. 1.) Plaintiff seeks, *inter alia*, injunctive

17   relief, compensatory and punitive damages, disgorgement, and the

18   imposition of a constructive trust.

19       Defendants now move to dismiss a number of Plaintiff's

20   claims.

21   **II.   STANDARD**

22       A dismissal motion under Federal Rule of Civil

23   Procedure 12(b)(6) challenges a complaint's compliance with the

24   federal pleading requirements. Under Rule 8(a)(2), a pleading

25   must contain a "short and plain statement of the claim showing

26   that the pleader is entitled to relief."  The complaint must give

27   the defendant "'fair notice of what the . . . claim is and the

28

9

grounds upon which it rests.'" <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

To meet this requirement, the complaint must be supported by factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).[4]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. <u>Iqbal</u>, 556 U.S. at 679. <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for

---

[4] Citing <u>Twombly</u>, 550 U.S. at 555-56, <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[5] A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

When the court sits in diversity, it must ordinarily apply the substantive law of the forum in which it is located. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). California substantive law therefore governs.

### A. What trade secrets are at issue?

Defendants do not move to dismiss Plaintiff's first cause of action, for misappropriation of trade secrets, as pled against

---

[5] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley[,]" although it was retiring the "no set of facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), cert. denied, 132 S. Ct. 2101 (2012). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

1   Hofioni and Albanese. In fact, Defendants acknowledge in their

2   Reply that the Complaint adequately pleads the trade secret

3   status of the Confidential Information. (Reply 1.) The court will

4   therefore treat the trade secret status of the Confidential

5   Information as adequately-pled.

6       What is less certain is the trade secret status of the

7   information in the Confidential Documents, which Plaintiff

8   characterizes as containing "confidential, proprietary, and trade

9   secret information." (Id. ¶ 59.) The court will infer, based on

10  the overlap between the content of the Excel and PDF files

11  described in the Complaint, and the description of the

12  Confidential Information, that the Confidential Documents contain

13  trade secret information.

14      **B. Has Plaintiff stated a claim against the Entity**

15      **Defendants?**

16      Plaintiff's causes of action for misappropriation of trade

17  secrets, statutory unfair competition, conversion, and conspiracy

18  are pled against Hofioni, Albanese, and the Entity Defendants.

19      The latter move to dismiss on the grounds that the Complaint

20  fails to state any claim against them whatsoever. Their attack is

21  two-pronged: they contend both that Plaintiff has failed to

22  allege sufficient facts to find them directly liable for

23  Hofioni's and Albanese's actions, or to impute liability to them.

24  (Motion 11, 14.)

25      As discussed elsewhere in this order, (i) Plaintiff has

26  adequately pled causes of action for statutory unfair competition

27  and conversion against the Entity Defendants, and (ii) California

28  law does not recognize a standalone cause of action for

conspiracy. Accordingly, the court here only considers the Entity Defendants' argument that the complaint fails to state a cause of action against them for trade secrets misappropriation.

Plaintiff does not argue that it alleged the Entity Defendants' direct liability. Instead, Plaintiff responds that the Complaint satisfactorily alleges the Entity Defendants' vicarious liability on both *respondeat superior* and conspiracy grounds. (Opposition 8.)

### 1. Has Plaintiff adequately pled the Entity Defendants' liability under a *respondeat superior* theory?

According to Witkin, "Under the doctrine of *respondeat superior*, the innocent principal or employer is liable for the torts of the agent or employee, committed while acting within the scope of employment." 3 Witkin, Summary of Cal. Law: Agency (10th ed. 2005) § 165, p. 208. The doctrine is founded in both common law, as well as on Cal. Civ. Code § 2338, which provides: "[A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

In support of its positions, Plaintiff cites Language Line Servs., Inc. v. Language Servs. Assocs., LLC, NO. C 10-02605 JW, 2010 WL 2764714, 2010 U.S. Dist. LEXIS 140350 (N.D. Cal. Jul. 13, 2010) (Ware, J.) (granting preliminary injunction in trade secrets dispute). Language Line, in turn, relies on a California appellate decision, Yamaguchi v. Harnsmut, which held that an

1   "employer may[] be vicariously liable for the employee's tort —

2   even if it was malicious, willful, or criminal — if the

3   employee's act was an outgrowth of his employment, inherent in

4   the working environment, typical of or broadly incidental to the

5   employer's business, or, in a general way, foreseeable from his

6   duties." 106 Cal. App. 4th 472, 482 (2003) (internal quotations

7   omitted). In Language Line, the district court – faced with a

8   factual situation similar to the one presented by the instant

9   case – indicated its willingness to premise employer liability on

10  a *respondeat superior* theory.

11      The Entity Defendants nevertheless argue that the Complaint

12  lacks allegations sufficient to support a *respondeat superior*

13  theory, and accordingly, the claims against them must be

14  dismissed. (Reply 6.)

15      Plaintiff contends that the following two paragraphs in the

16  Complaint support its *respondeat superior* theory:

17          14. U.S. Legal Support is informed and
18          believes, and based upon such information and
            belief alleges, that at all times relevant to
19          this action, each of the Defendants named
            herein was doing business as ("dba") and/or
20          was the agent, principal, servant,
            representative, employer, employee, joint-
21          venturer, partner (of any kind), parent,
            subsidiary, affiliate, and/or alter ego of
22          each and every other Defendant and, in doing
            the things hereinafter alleged, was acting
23          within the course and/or scope of such
            authority as the dba, agent, principal,
24          servant, representative, employer, employee,
            joint-venturer, partner (of any kind),
25          parent, subsidiary, affiliate, and/or alter
            ego with the permission and consent of the
26          remaining Defendants.
27

28

104.  U.S.  Legal  Support  is  informed  and
believes,  and  based  thereon  alleges,  that
Hofioni and Albanese agreed among themselves,
and with representatives of The LIT Group and
its  related  entities,  prior  to  Hofioni  and
Albanese commencing their employment with The
LIT  Group  and  its  related  entities  and
thereafter,  to  misappropriate  U.S.  Legal
Support's  trade  secret  information  and  then
utilize  said  information  to  compete  against
and  injure  U.S.  Legal  Support.  (Opposition
8.)

It is difficult to disagree with the Entity Defendants'

characterization of the first paragraph as consisting largely of

the type of conclusory allegations warned against by <u>Twombly</u> and

<u>Iqbal</u>. (Reply 5.) The second paragraph, by contrast, contains

sufficient factual content to pass <u>Twombly</u>/<u>Iqbal</u> muster,

particularly when considered with other allegations in the

Complaint that describe the nature of the misappropriation and

the trade secrets at issue.

Nevertheless, this paragraph takes the Complaint beyond the

ambit of *respondeat superior*, a doctrine which is used to impose

*vicarious* liability on employers for the torts of their

employees.[6] The paragraph quoted above alleges the Entity

---

[6] <u>See</u>, <u>e.g.</u>, <u>Yamaguchi</u>, 106 Cal. App. 4th at 481 ("Under the
doctrine of respondeat superior, an innocent employer may be
liable for the torts its employee commits while acting within the
scope of his employment."); <u>Hinman v. Westinghouse Elec. Co.</u>, 2
Cal. 3d 956, 959-960 (1970) ("The losses caused by the torts of
employees, which as a practical matter are sure to occur in the
conduct of the employer's enterprise, are placed upon that
enterprise itself, as a cost of doing business."); <u>Farms Ins.
Grp. v. Cnty. of Santa Clara</u>, 11 Cal. 4th 992, 1004 (1995)
("'[F]oreseeability' as a test for *respondeat superior* merely
means that in the context of the particular enterprise an
employee's conduct is not so unusual or startling that it would
seem unfair to include the loss resulting from it among other
costs of the employer's business.") (internal quotation omitted).

1    Defendants' *knowing* participation in a scheme to misappropriate

2    trade secrets. This is in marked contrast to the situation

3    presented in <u>Language Line</u>, *supra*, where the new employer

4    contended that it could not be held liable because its "executive

5    and management team did not know of the misappropriation." 2010

6    WL 2764714 at *2, 2010 U.S. Dist. LEXIS 140350 at *6-7. The

7    district court was nevertheless willing to impose vicarious

8    liability under *respondeat superior* principles because "an act of

9    this nature [*i.e.*, using trade secrets] was generally foreseeable

10   as part of the [individuals defendants'] duties to solicit

11   customers for [the new employer]." <u>Id.</u>, 2010 WL 2764714 at *5,

12   2010 U.S. Dist. LEXIS 140350 at *12 (citing <u>Yamaguchi</u>, 106 Cal.

13   App. 4th at 481-82).

14       Plaintiff may be able to assert the Entity Defendants'

15   direct liability based on the allegations in Paragraph 104.[7] But

16   as currently pled, the Complaint does not include relevant

17   allegations that might support a *respondeat superior* theory: that

18   Hofioni and Albanese were acting within the scope of their

19   employment or agency, and that their misappropriation and use of

20   Plaintiff's trade secrets were either "required by or incident to

21   [their] duties, or could reasonably be foreseen by the employer

22   in any event." <u>John R. v. Oakland Sch. Dist.</u>, 48 Cal. 3d 438, 463

23   (1989). Plaintiff's *respondeat superior* argument is therefore

24   unavailing.[8]

---

25   [7] Plaintiff would need to include additional allegations in

26   support of a claim for corporate liability for trade secrets
     misappropriation.

27

28   [8] One could advance a sensible argument that, in any instance in
     which an employee is alleged to have misappropriated trade

                                    16

## 2. Has Plaintiff adequately pled the Entity Defendants' liability as part of a conspiracy?

The elements of a conspiracy are (1) formation and operation of a conspiracy; (2) wrongful acts done in furtherance of the agreed-to plan; and (3) resulting damages. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994).

Plaintiff has alleged the formation and operation of a conspiracy. Paragraph 104 of the Complaint, reproduced above, alleges that Hofioni and Albanese, prior to commencing their employment with the Entity Defendants, agreed with the Entity Defendants to misappropriate Plaintiff's trade secrets. This allegation satisfies the first element. But this paragraph is pled only in relation to the trade secrets misappropriation cause of action.

The second element is satisfied, as the Complaint sets forth various wrongful acts in furtherance of the conspiracy, e.g., that between April and July 2013, Hofioni and Albanese "covertly

---

secrets and departed for a similar position with a competitor, it is reasonably foreseeable that the employee would then use the trade secrets for the new employer's benefit. But California law does not currently recognize that respondeat superior liability is potentially inherent in this factual situation. Accordingly, it seems appropriate that Plaintiff be required to explicitly plead the supporting allegations. The court, in reaching this conclusion, is also guided by decisions holding that California law does not recognize the inevitable disclosure doctrine, whereby "a plaintiff may prove a claim of trade secret misappropriation by demonstrating the defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 1458 (2002) (quoting PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995)). See also FLIR Systems, Inc. v. Parrish, 174 Cal. App. 4th 1270, 1277 (2009) ("The doctrine of inevitable disclosure is not the law in California").

accessed and retained" the Confidential Documents. (Complaint ¶ 60.)

Finally, Plaintiff adequately pleads damages. The Complaint provides that Hofioni and Albanese "are actively soliciting through use of U.S. Legal Support's trade secrets U.S. Legal Support's customers for business on behalf of the LIT Group and its related entities." (Complaint ¶ 93.) The Complaint also provides the specific example of Hofioni "repeatedly . . . contact[ing] the customers served by U.S. Legal Account Executive[] Jenna Derdowski during the period Hofioni and Albanese were employed by U.S. Legal Support." (Id. ¶ 83.) And Plaintiff alleges that "Defendants have already caused U.S. Legal Support monetary damage." (Id. ¶ 100.)

The court takes note that, under California law, conspiracy is not a stand-alone cause of action, but rather, "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp., 7 Cal. 4th at 510-511 (citing Wyatt v. Union Mortg. Co., 24 Cal.3d 773, 784 (1979)). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." Id. at 511. Accordingly, Plaintiff must specify which torts were the objects of the conspiracy. The court infers that Plaintiff intended to plead a conspiracy to commit trade secrets misappropriation, as Paragraph 104 is pled as part of that cause of action. Nevertheless, the Complaint fails to set forth a basis for respondeat superior liability on the misappropriation claim.

**C. Are Plaintiff's third through sixth claims preempted by CUTSA?**

Defendants contend that Plaintiff's claims for breach of the duty of loyalty (alleged against Hofioni and Albanese), breach of the duty of confidence (alleged against Hofioni and Albanese), statutory unfair competition (alleged against all Defendants), and conversion (alleged against all Defendants) must be dismissed because California's codification of the Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*,[9] supersedes claims "based on the same nucleus of facts as [a] misappropriation of trade secrets claim for relief." K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009) (internal citation and quotation omitted). (Motion 5.)

The California Supreme Court has yet to rule on CUTSA's supersessive scope. In such circumstances, courts in the Ninth Circuit are directed to proceed as follows:

> When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

---

[9] "[T]the eleven provisions of the [C]UTSA set forth: the definition of 'misappropriation' and 'trade secret,' injunctive relief for actual or threatened misappropriation, damages, attorney fees, methods for preserving the secrecy of trade secrets, the limitations period, the effect of the title on other statutes or remedies, statutory construction, severability, the application of title to acts occurring prior to the statutory date, and the application of official proceedings privilege to disclosure of trade secret information." AccuImage Diagnostics Corp v. Terarecon, Inc., 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003) (Patel, J.)

1

> treatises, and restatements as guidance.
> However, where there is no convincing
> evidence that the state supreme court would
> decide differently, a federal court is
> obligated to follow the decisions of the
> state's intermediate appellate courts.

Lewis v. Tel. Emps. Credit Union, 87 F.3d 1537, 1545 (9th Cir.

1996) (internal quotations and citations omitted).

To begin, it is necessary to review the definition of trade

secret. Under CUTSA, a "trade secret" is information that:

> (1) Derives independent economic value,
> actual or potential, from not being generally
> known to the public or to other persons who
> can obtain economic value from its disclosure
> or use; and

> (2) Is the subject of efforts that are
> reasonable under the circumstances to
> maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "The *sine qua non* of a trade

secret . . . is the plaintiff's possession of information of a

type that can, at the possessor's option, by made known to

others, or withheld from them, *i.e.*, kept secret." Silvaco Data

Sys. v. Intel Corp., 184 Cal. App. 4th 210, 220 (2010),

disapproved on other grounds by Kwikset Corp. v. Superior Court,

51 Cal. 4th 310 (2011). "Trade secret law, in short, protects

only *the right to control the dissemination of information*." Id.

at 221 (emphasis in original).

CUTSA features a peculiarly-worded savings provision:

> (a) Except as otherwise expressly provided,
> this title does not supersede any statute
> relating to misappropriation of a trade
> secret, or any statute otherwise regulating
> trade secrets.

20

        (b)   This   title   does   not   affect
(1) contractual   remedies,   whether   or   not
based   upon   misappropriation   of   a   trade
secret,   (2)   other   civil   remedies   that   are   not
based   upon   misappropriation   of   a   trade
secret,   or   (3)   criminal   remedies,   whether   or
not   based   upon   misappropriation   of   a   trade
secret.

        (c) This title does not affect the disclosure
of a record by a state or local agency under
the California Public Records Act . . . .

Cal. Civ. Code § 3426.7. As a California appeals court noted,

this provision "contains two savings clauses, but no explicit

declaration of supersessive effect from which to 'save'

anything." Silvaco, 184 Cal. App. 4th at 233. That court

nevertheless went on to reason that the provision's "peculiar

construction . . . is best understood as *assuming* that CUTSA

would occupy the field of trade secrets liability, and as seeking

to limit the Act's supersessive effect only as it might impair

the specified statutes and remedies." Id. at 234 (emphasis in

original).[10] It is now generally accepted that "CUTSA provides the

exclusive civil remedy for conduct falling within its terms, so

as to supersede other civil remedies 'based upon misappropriation

of a trade secret.'" Id. at 236 (quoting Cal. Civ. Code

§ 3426.7(a), (b)); accord K.C. Multimedia, 171 Cal. App. 4th at

954 ("§ 3426.7 implicitly preempts alternative civil remedies

---

[10] These "statutes and remedies" include, *e.g.*, Cal. Pen. Code
§ 499c (criminalizing theft of trade secrets), Cal Pen. Code
§ 502 (criminalizing, *inter alia*, unauthorized access to computer
systems in order to obtain data); Cal. Gov't Code § 6254.26
(exempting from disclosure under the California Public Records
Act certain information regarding "alternative investments" in
which state public investment funds invest), and so forth. A more
comprehensive list can be found at Silvaco, 184 Cal. App. 4th at
235 n. 17.

based on trade secret misappropriation."). Both parties appear to be in agreement with this principle.

Defendants' motion to dismiss is based on a recent line of cases that have extended CUTSA's reach to hold that the statute also supersedes civil remedies for misappropriation of confidential or proprietary information that does not qualify for trade secret protection. Two main policy rationales underlie this approach. First, if CUTSA did not supersede these claims, then misappropriation of non-trade secrets would justify a broader range of civil remedies than misappropriation of trade secrets; it is arguable that such a result is perverse, since non-trade secrets seem to be both less valuable and subject to fewer protective measures than trade secrets. See SunPower Corp. v. SolarCity Corp., No. 12-CV-00694-LHK, 2012 WL 6160472, 2012 U.S. Dist. LEXIS 176284 (N.D. Cal. Dec. 11, 2012) (Koh, J.) ("To [not recognize the full extent of CUTSA supersession] would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead potentially more favorable common-law claims) by simply failing to allege one of the elements necessary for information to qualify as a trade secret.").[11] The second rationale rests on the premise that the law must recognize some property interest in information before its misappropriation may be deemed unlawful. See, e.g., Silvaco, 184 Cal. App. 4th at 239 n. 22 ("Information that does not fit this definition [of "trade secret," under CUTSA], and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or

---

[11] This suggests a broader supersession than the savings clause might well support.

22

1  stolen."); <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S.

2  340, 344 (1991) ("That there can be no valid copyright in facts

3  is universally understood."). One test for supersession that

4  emerges from caselaw is as follows:

5          [A plaintiff's] claims based on its non-trade
           secret proprietary information are superseded
6          unless one of the following conditions is
           met: (1) [the plaintiff] can allege facts
7          that show that the non-trade secret
           proprietary information was made property by
8          some provision of positive law on grounds
           that are qualitatively different from the
9          grounds upon which trade secrets are
           considered property or (2) it can otherwise
10         be concluded that [the non-trade secret
           claims] allege wrongdoing that is materially
11         distinct from the wrongdoing alleged in a
           CUTSA claim.
12

13

14  <u>SunPower Corp.</u>, 2012 WL 6160472 at *9, 2012 U.S. Dist. LEXIS

15  176284 at *29 (internal quotations and citations omitted)

16  (dismissing claims for breach of confidence, conversion, trespass

17  to chattels, and unfair competition based on CUTSA supersession);

18  <u>see also</u> <u>Heller v. Cepia, L.L.C.</u>, No. C 11-01146 JSW, 2012 WL

19  13572 at *7, 2012 U.S. Dist. LEXIS 660 at *21 (N.D. Cal. Jan. 4,

20  2012) (White, J.) (dismissing claims for misappropriation,

21  conversion, unjust enrichment, and trespass to chattels based on

22  CUTSA supersession, in part because plaintiff failed to

23  "identif[y] any law that confers property rights on his non-trade

24  secret confidential information."); <u>see also</u> <u>Silvaco</u>, 184 Cal.

25  App. 4th at 239 n. 22 (in dicta, "emphatically reject[ing] . . .

26  the suggestion that the uniform act was not intended to preempt

27  'common law conversion claims based on the taking of information

28

that, though not a trade secret, was nonetheless of value to the claimant.'"); see also <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (Carter, J.) (holding, on summary judgment, that "[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").

That said, several courts have held that the question of whether claims are superseded by CUTSA is a fact-based inquiry better suited for summary judgment than a motion to dismiss:

> Some courts have split the baby by electing to dismiss claims under CUTSA's savings clause only after determining that the protected information was a trade secret. [citations omitted.] But this approach puts parties in the uncomfortable position of conceding CUTSA liability in order to prevail on another claim. The better approach may be to determine whether the information alleged to have converted was "made property by some provision of positive law," <u>Silvaco</u>, 184 Cal.App.4th at 239 n. 22, on grounds that are qualitatively different from the grounds upon which trade secrets are considered property. Resolving this question requires analysis of the facts: namely, what the confidential or proprietary information is, how it was converted, and the property interest alleged to have harmed as a result of that conversion. All of these questions can be addressed at summary judgment and/or trial.

<u>Bryant v. Mattel, Inc.</u>, No. CV 04-9049 DOC (RNBx), 2010 WL 3705668 at *22, 2010 U.S. Dist. LEXIS 103851 at *74 (C.D. Cal. Aug. 2, 2010) (Carter, J.). <u>Accord</u> <u>Amron Intern. Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.</u>, No. 11-CV-1890, 2011 WL 5025178 at *10, 2011 U.S. Dist. LEXIS 122420 at *27 (S.D. Cal. Oct. 21, 2011) (Huff, J.) ("At this point in the case, the status

of the information is merely a matter of allegation and until the
distinction is made between [plaintiff's] allegedly
misappropriated trade secret information and its confidential or
non-confidential proprietary non-trade secret information, the
question of preemption should not be addressed.").

The court is of the view that the question of supersession
is properly addressed at summary judgment. Defendants challenge
Plaintiff's use of the phrase "confidential, proprietary, and
trade secret information" without describing what the
"confidential" and/or "proprietary" information consists of,[12]
writing that the Complaint "fails to identify with any reasonable
particularity where its trade secrets stop and its non-trade
secret but still protectable information begins." (Reply 2.) The
Complaint puts Defendants on sufficient notice (i) that these
categories of information exist and (ii) that they provide a
basis for claims for breach of the duty of loyalty, breach of the
duty of confidence, statutory unfair competition, and conversion.
Defendants can determine in discovery whether Plaintiff's
contentions have any merit, and when appropriate, bring a summary
judgment motion as to the issue of supersession.

### D. Has plaintiff made out a claim for conversion against Albanese and against the Entity Defendants?

Plaintiff's sixth cause of action, for conversion, is pled
against all of the Defendants. Albanese and the Entity Defendants

---

[12] The one exception, in paragraph 130, is substantially similar
to the description of the Confidential Information in paragraph
24, except that it identifies (i) certain business plans and
(ii) "all other confidential and proprietary information that
Defendants has access to and stole."

1   move to dismiss, on the grounds that the complaint only alleges

2   acts of conversion by Hofioni. (Motion 19-20.) Plaintiff does not

3   address this argument in its opposition, though, in arguing

4   against CUTSA supersession, plaintiff asserts that its claim for

5   conversion is based on Hofioni's alleged misappropriation of a

6   laptop, gift cards and moneys, and tangible company documents.

7   (Opposition 11-12.)

8        The elements of conversion under California law are "(1) the

9   plaintiff's ownership or right to possession of personal

10  property; (2) the defendant's disposition of the property in a

11  manner that is inconsistent with the plaintiff's property rights;

12  and (3) resulting damages." <u>Fremont Indem. Co. v. Fremont Gen.</u>

13  <u>Corp.</u>, 148 Cal. App. 4th 97, 119 (2007) (<u>cited for this</u>

14  <u>proposition in</u> 5 Witkin, <u>Summary of Cal. Law: Torts</u> (2013 Supp.)

15  § 699, pp. 214-15). California courts "have traditionally refused

16  to recognize as conversion the unauthorized taking of intangible

17  interests that are not merged with, or reflected in, something

18  tangible," <u>Thrifty-Tel, Inc. v. Bezenek</u>, 46 Cal. App. 4th 1559,

19  1565 (1996), though there are recognized exceptions where "both

20  the property and the owner's right of possession and exclusive

21  use are sufficiently definite and certain." <u>Fremont Indem.</u>, 148

22  Cal. App. 4th at 125.

23       The complaint provides:

24            [Plaintiff] is informed and believes, and
             based thereon alleges, that Hofioni and
25            Albanese agreed among themselves, and with
             representatives of the LIT Group and its
26            related entities, prior to Hofioni and
             Albanese commencing their employment with The
27            LIT Group and its related entities and

28

26

> thereafter, to take the actions set forth herein to wrongfully convert property belonging to [Plaintiff]. (Complaint ¶ 154.)

While this paragraph, in its use of the phrase "wrongfully convert property," verges on the sort of conclusory allegation forbidden by Twombly and Iqbal, there are sufficient additional facts pled in the complaint to make clear that Hofioni is accused of converting a laptop, gift cards, and company documents.[13] The remainder of this paragraph alleges that Hofioni converted these items based on an agreement to do so with Albanese and the Entity Defendants.

Recall that the elements of a conspiracy are (1) formation and operation of a conspiracy; (2) wrongful acts done in furtherance of the agreed-to plan; and (3) resulting damages. Applied Equip. Corp., 7 Cal. 4th at 511. Paragraph 154, *supra*, satisfies the first element. Hofioni's alleged retention of the laptop, and taking of the gift cards and documents, satisfies the second element. Finally, Plaintiff has alleged that "Defendants have already caused U.S. Legal Support monetary damage." (Id. ¶ 100.)

In sum, Plaintiff has adequately pled both Hofioni's conversion of its property and the existence of a conspiracy among all of the Defendants to carry out this conversion.

---

[13] As to the latter - in an email dated July 21, 2013, Hofioni informed Plaintiff that he had "shredded items." (Complaint ¶ 70.) This email was in response to Plaintiff's demand that Hofioni "fully and unconditionally certify that he did not have any confidential business information or trade secret information belonging" to Plaintiff. (Id. ¶ 69.) Plaintiff asserts that it is reasonable to infer from this exchange that Hofioni had converted tangible company documents. (Opposition 11.) The court agrees.

1   Accordingly, the motion to dismiss this cause of action is

2   denied.

3       **E. Has Plaintiff stated a statutory unfair competition claim?**

4       California's statutory unfair competition law ("UCL")

5   prohibits "any unlawful, unfair or fraudulent business act or

6   practice and unfair, deceptive, untrue or misleading advertising

7   and any act prohibited by [the false advertising law (§ 17500 *et*

8   *seq.*)]." Cal. Bus. & Prof. Code § 17200. According to the

9   California Supreme Court, the statute recognizes three varieties

10  of unfair competition: acts or practices that are (i) unlawful,

11  (ii) unfair, or (iii) fraudulent. Cel-Tech Commc'ns., Inc. v. Los

12  Angeles Cellular Tel., 20 Cal. 4th 163, 180 (1999); accord Rose

13  v. Bank of Am., N.A., 57 Cal. 4th. 390, 394 (2013).

14      Defendants contend that a "plaintiff is required to state

15  with reasonable particularity the facts supporting an alleged

16  violation of the UCL." (Motion 15.) However, in support of this

17  contention, they cite Khoury v. Maly's of Cal., 14 Cal. App. 4th

18  612, 619 (1993) and Saunders v. Superior Court, 27 Cal. App. 4th

19  832, 841-42 (1994). These decisions address California, rather

20  than federal, pleading standards. California, as a code pleading

21  jurisdiction, requires complaints to contain "[a] statement of

22  the facts constituting the cause of action, in ordinary and

23  concise language." Cal. Code Civ. Proc. § 425.10(a)(1). By

24  contrast, under Rule 8, "[t]he pleader [in federal court] . . .

25  is not restricted to statement of the 'facts.'" 4 Witkin, Cal.

26  Procedure: Pleading (5th ed. 2008) § 379, p. 515. While Twombly

27  and Iqbal "have paved the way for a heightened 'plausibility'

28

28

pleading standard that requires plaintiffs to provide greater

factual development in their complaints in order to survive a

Rule 12(b)(6) motion to dismiss," 5 Charles Alan Right & Arthur

R. Miller, <u>Fed. Practice and Procedure: Civil</u> § 1202 (3d ed.

2012), it is nevertheless axiomatic that, even where state law

claims are alleged, "[t]he manner and details of pleading in the

federal courts are governed by the Federal Rules of Civil

Procedure regardless of the source of substantive law to be

applied in the particular action." <u>Id.</u> § 1204. "[A] federal

pleading that satisfies the Rule 8(a) standard will not be

dismissed simply because it would be vulnerable to a

demurrer . . . in a forum state court." <u>Id.</u>

Despite the parties' joint failure to properly brief this matter, the court will evaluate defendants' motion under federal law.

### 1. "Unlawful"

Plaintiff alleges unlawful conduct under the UCL. "By proscribing 'any unlawful' business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." <u>Cel-Tech</u>, 20 Cal. 4th at 180.

Defendants move to dismiss, contending that Plaintiff "cannot point to any 'unlawful' conduct on Defendants' part. It thus cannot allege an 'unlawful' act or practice under [the UCL.]" (Motion 17-18.) Their argument presumes that Plaintiff's non-CUTSA claims are superseded; they write, "The remaining allegations of 'unlawful' practices relate to misappropriation,

which is preempted and otherwise insufficiently pled." (Motion 17.)

Defendants are correct, insofar as the court has dismissed Plaintiff's cause of action for trade secrets misappropriation under a *respondeat superior* theory. However, as discussed *supra*, Plaintiff has satisfactorily pled causes of action for trade secrets misappropriation and conversion against the Entity Defendant, both pursuant to conspiracy. These causes of action, in turn, are a sufficient basis for alleging "unlawful" conduct under the UCL. Plaintiff has also adequately pled causes of action for trade secrets misappropriation, breach of contract, breach of the duty of loyalty, breach of the duty of confidence, conversion, and fraud against Hofioni and Albanese, which, in turn, will support claims under the UCL's "unfawful" prong against these individual defendants.

Accordingly, the motion to dismiss Plaintiff's cause of action under the UCL "unlawful" prong will be denied.

### 2. "Unfair"

Plaintiff alleges unfair competition under the UCL.

Defendants counter that, "Where a plaintiff fails to state an antitrust claim, and an unfair competition claim is based upon the same allegations, the [latter] is properly dismissed." (Motion 16.) In support, Defendants quote Cel-Tech, 20 Cal. 4th at 186-7, for the proposition that "[t]he inquiry as to what is 'unfair' is limited to 'conduct that threatens an incipient violation of an anti-trust law, or violates the policy and spirit of one of those laws because its effects are comparable to or the

1  same as a violation of the law, or otherwise significantly

2  threatens or harms competition.'" (Id.)

3      Defendant's position is puzzling. <u>Cel-Tech</u> does not require

4  plaintiffs to base UCL unfair conduct claims solely on antitrust

5  violations; the quoted passage quite clearly provides that such

6  claims may be based on conduct which "otherwise significantly

7  threatens or harms competition."

8      It is well-settled that misappropriation of trade secrets in

9  violation of CUTSA can form the predicate for an unfair

10  competition claim under the UCL. <u>See</u> <u>Courtesy Temp. Servs. v.</u>

11  <u>Camacho</u>, 222 Cal. App. 3d 1278, 1292 ("[T]he cases are legion

12  holding that a former employee's use of confidential information

13  obtained from his former employer to compete with him and to

14  solicit the business of his former employer's customers, is

15  regarded as unfair competition.")

16      As Plaintiff has pled a cause of action for trade secrets

17  misappropriation against all of the Defendants, it may proceed

18  against them under the UCL's "unfair" prong.

19              **3. "Fraudulent"**

20      Plaintiff alleges fraudulent conduct under the UCL.

21      Defendants move to dismiss, on the grounds that Plaintiff

22  "has not alleged any conduct that is likely to deceive the

23  public," a requirement for a UCL fraud claim. (Motion 18.)

24      Plaintiff responds that paragraph 144 of the complaint

25  adequately alleges fraud:

26          U.S. Legal Support is informed and believes

27          that the statements made by The LIT Group and
            its related entities in their marketing

28          materials contain false and misleading

31

> statements because they describe
> relationships with companies that The LIT
> Group and its related entities do not in fact
> have.

While the court is satisfied that consumers of legal services
could be deceived by false statements about the identities of
Defendants' customers, it does not appear that Plaintiff has
standing to raise a UCL fraud claim. California's Proposition 64
added language "impos[ing] an actual reliance requirement on
plaintiffs prosecuting a private enforcement action under the
UCL's fraud prong." In re Tobacco II Cases, 46 Cal. 4th 298, 326
(2009). "Reliance is proved by showing that the defendant's
misrepresentation or nondisclosure was an immediate cause of the
plaintiff's injury-producing conduct." Id. (quoting Mirkin v.
Wasserman, 5 Cal. 4th 1082, 1110-11 (1993)).

As Plaintiff is not a consumer of Defendants' services, it
cannot demonstrate reliance on Defendants' fraudulent statements
in order to establish standing under the UCL's fraud prong.
Accordingly, this claim will be dismissed with prejudice.

### 4. Damages

It is well-settled that the UCL provides only equitable
remedies, typically in the form of injunctive relief and
restitution. Cal. Bus. & Prof. Code § 17203; see also Clayworth
v. Pfizer, Inc., 49 Cal. 4th 758, 789-90 (2010) ("Section 17203
makes injunctive relief the primary form of relief available
under the UCL, while restitution is merely ancillary.")

Defendants contend that Plaintiff illegitimately seeks
compensatory damages under the UCL. (Motion 18-19.) Plaintiff
counters that it seeks no such damages, having pled:

As a proximate result of Defendants' above-mentioned acts, including those by Hofioni and Albanese for themselves and under the agreement alleged above, U.S. Legal Support suffered an injury in fact, has lost money or property as a result, and faces continued irreparable injury. Further, Defendants have been unjustly enriched in an amount to be proven at the time of trial, but which is in excess of the minimal jurisdictional amount of this Court, **entitling U.S. Legal Support to restitution and/or other equitable relief**. (Complaint ¶ 148.)

Plaintiff does not appear to seek remedies other than equitable relief. Defendants' motion to dismiss Plaintiff's damages plea is therefore denied.

## IV.   CONCLUSION

In light of the foregoing, the court hereby orders as follows:

[1] To the extent that is based on a *respondeat superior* theory of liability, the first cause of action (misappropriation of trade secrets) is DISMISSED without prejudice as to The LIT Group, Hutchings Court Reporters, LLC, and Litigation Services.

[2] To the extent that is pled on the basis of fraudulent conduct, the fifth (statutory unfair competition) cause of action is DISMISSED with prejudice.

[3] The eighth cause of action (conspiracy) is DISMISSED with prejudice. Plaintiff may re-allege the elements of a conspiracy in any amended complaint, but should not plead conspiracy as a standalone cause of action.

33

1   [4] In all other respects, the motion to dismiss is DENIED.

2

3   [5] Plaintiff is GRANTED leave to file an amended complaint

4   no later than twenty-one (21) days after docketing of this

5   order.

6   IT IS SO ORDERED.

7   DATED:  December 19, 2013.

8

9

10

11  LAWRENCE K. KARLTON
    SENIOR JUDGE
12  UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28