UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. LEGAL SUPPORT, INC., A Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMEEN HOFIONI, an individual, MORGAN ALBANESE, an individual, THE LIT GROUP, a Nevada corporation, HUTCHINGS COURT REPORTERS, LLC, a California corporation, LITIGATION SERVICES, a Nevada corporation,<br><br>Defendants. | No.  CIV. S-13-01770 LKK/AC<br><br>**ORDER** |

Plaintiff U.S. Legal Support, Inc. alleges that defendants Ameen Hofioni and Morgan Albanese, its former employees, misappropriated certain trade secrets, confidential information, and personal property, both for their own benefit and for the benefit of their new employer, defendant The LIT Group, and its

1

1  affiliated entities, defendants Hutchings Court Reporters, LLC
2  and Litigation Services.[1]

3  Defendants' attorneys, from the law firm of Squire Patton
4  Boggs (US) LLP[2] ("Squire Patton"), have moved to withdraw as
5  counsel for defendant Hofioni. (ECF No. 50.) Hofioni opposes this
6  motion, and moves in turn to disqualify Squire Patton as counsel
7  for all defendants. Daniel L. Baxter and George A. Guthrie of the
8  law firm of Wilke Fleury Hoffelt Gould and Birney LLP ("Wilke
9  Fleury") represent Hofioni for the purposes of these motions.

10  Having thoroughly considered the matter, the court has
11  determined that Squire Patton committed at least three breaches
12  of its duty of loyalty to Hofioni, each of which is sufficient,
13  in and of itself, to disqualify Squire Patton as counsel for all
14  defendants herein. Accordingly, the court will disqualify Squire
15  Patton as counsel for all defendants, for the reasons set forth
16  below.

**I. PROCEDURAL BACKGROUND**

The court heard Squire Patton's motion to withdraw on April 21, 2014. After considering the parties' arguments, the court issued an Order directing Squire Patton to provide notice as to whether the firm would consent to turn over to Wilke Fleury copies of any communications with the Non-Hofioni Defendants regarding "(i) the circumstances leading up to Squire Patton's

---

[1] Hereinafter, the term "Entity Defendants" collectively means The LIT Group, Hutchings Court Reporters, LLC, and Litigation Services. The term "Non-Hofioni Defendants" collectively means Morgan Albanese and the Entity Defendants.

[2] On June 1, 2014, the firm's name changed from "Squire Sanders (US) LLP" to "Squire Patton Boggs (US) LLP."

1  decision to withdraw from representing Hofioni, including, but
2  not limited to, settlement discussions with plaintiff, and
3  efforts to obtain Hofioni's signature on the Common
4  Representation Agreement . . . and (ii) any agreement to pay the
5  costs of Hofioni's legal representation and/or to indemnify him
6  for damages herein." (Order, ECF No. 57.) The Order further
7  provides that if Squire Patton refused to turn over these
8  documents, then the court would disqualify Squire Patton as
9  counsel for all of the defendants. (Id.)
10     On May 7, 2014, Squire Patton notified the court that it
11 would turn over the documents in question to Wilke Fleury. (ECF
12 No. 59.) On May 9, 2014, Mr. Baxter filed a declaration averring
13 that he would "submit an additional statement and/or declaration
14 regarding Squire Patton's motion to withdraw" no later than May
15 23, 2014. (ECF No. 60.)
16     On May 23, 2014, Hofioni filed a brief, which, together with
17 a declaration from Mr. Baxter, argue for Squire Patton's
18 disqualification as counsel for all defendants herein. (ECF
19 No. 61.) After reviewing these filings, the court gave Squire
20 Patton fifteen days to file either an opposition or a statement
21 of non-opposition thereto. (ECF No. 62.)
22     On June 13, 2014, Squire Patton filed an opposition, along
23 with a declaration by attorney Stacie D. Yee. (ECF No. 65.) As
24 the latter contains as exhibits a number of communications
25 covered by the attorney-client privilege, the court granted
26 Squire Patton's request to seal this filing. (ECF No. 66.)
27     After further considering the matter, the court ordered
28 Hofioni to file a declaration "describing in detail the

confidential information, if any, that he has disclosed to Squire Patton since the commencement of this action, and his view of how this disclosure might prejudice him in these proceedings or other litigation between any of the parties." (Order, ECF No. 70.) On July 14, 2014, Hofioni submitted this declaration to the court via email and served it on Squire Patton. (ECF No. 72.) Upon receipt of this declaration, Squire Patton requested leave to file a response, which the court granted. (Order, ECF No. 75.) On July 23, 2014, Squire Patton submitted its response, and also served it on Wilke Fleury. (ECF No. 78.)

**II. STANDARDS**

**A. Standard re: withdrawal**

Under Local Rule 182(d), "an attorney who has appeared may not withdraw leaving the client *in propria persona* without leave of court upon noticed motion and notice to the client and all other parties who have appeared." The Local Rule also provides that withdrawal as counsel is "governed by the Rules of Professional Conduct of the State Bar of California, and the attorney shall conform to the requirements of those Rules."

California Rule of Professional Conduct 3-310(C) forbids, absent consent, the concurrent representation of clients with adverse interests. It provides that "[a] member shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ."

4

1   Under the Rule, "informed written consent" means "the client's or
2   former client's written agreement to the representation following
3   written disclosure," and "disclosure" means "informing the client
4   or former client of the relevant circumstances and of the actual
5   and reasonably foreseeable adverse consequences to the client or
6   former client." Cal R. Prof. Conduct 3-700(A)(1), (2).
7        Additionally, "the duties to which an attorney in
8   [California] are subject are not exhaustively delineated by the
9   Rules of Professional Conduct, and . . . these rules are not
10  intended to supersede common law obligations." <u>Santa Clara Cnty.
11  Counsel Attys. Ass'n. v. Woodside</u>, 7 Cal. 4th 525, 548 (1994),
12  <u>overruled by statute on other grounds as recognized in</u> <u>Coachella
13  Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't
14  Relations Bd.</u>, 35 Cal. 4th 1072, 1077 (2005). One such duty is
15  the duty of loyalty, which encompasses "an attorney's duty to
16  protect his client in every possible way[;] it is a violation of
17  that duty for him to assume a position adverse or antagonistic to
18  his client without the latter's free and intelligent
19  consent . . . ." <u>Anderson v. Eaton</u>, 211 Cal. 113, 116 (1930). The
20  California Supreme Court has elaborated as follows:

21           The most egregious conflict of interest is
             representation of clients whose interests are
22           directly adverse in the same litigation. Such
             patently improper dual representation
23           suggests to the clients — and to the public
             at large — that the attorney is completely
24           indifferent to the duty of loyalty and the
             duty to preserve confidences. However, the
25           attorney's actual intention and motives are
             immaterial, and the rule of automatic
26           disqualification applies. The rule is
             designed not alone to prevent the dishonest
27           practitioner from fraudulent conduct, but
28

5

> also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights. The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another.

People v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1147 (1999) (internal citations and quotations omitted).

California Rule of Professional Conduct 3-700 governs termination of employment as counsel. Withdrawal is mandatory if "[t]he member knows or should know that continued employment **will** result in violation of these rules or of the State Bar Act . . . ." Cal R. Prof. Conduct 3-700(B)(2) (emphasis added). Withdrawal is permissive if "[t]he continued employment is **likely** to result in a violation of these rules or of the State Bar Act . . . ." Cal R. Prof. Conduct 3-700(C)(2) (emphasis added). Withdrawal is also permitted if "[t]he member believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal." Cal. R. Prof. Conduct 3-700(C)(6).[3] In any case, "[a] member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due

---

[3] Squire Patton also notes that withdrawal is permitted where "[t]he client . . . by other conduct renders it unreasonably difficult for the member to carry out the employment effectively." Cal. R. Prof. Conduct § 3-700(C)(1)(d). As the conflict presented was raised by *plaintiff*'s refusal to settle with Hofioni, it does not appear that Hofioni's conduct is implicated. Accordingly, this basis for withdrawal has been disregarded herein.

6

1  notice to the client, allowing time for employment of other
2  counsel, complying with rule 3-700(D) [addressing transfer of
3  client papers and property and refund of fees], and complying
4  with applicable laws and rules." Cal. R. Prof. Conduct 3-
5  700(A)(2).
6      Whether to allow withdrawal is a decision within the court's
7  discretion. U.S. v. Carter, 560 F.3d 1107, 1113 (9th Cir. 2009).

### B. Standard re: disqualification

9      Motions for disqualification are governed by state law. In
10 re Cnty. of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000).
11     When a law firm simultaneously represents clients who
12 (i) have potentially- or actually-conflicting interests and
13 (ii) have not each provided their informed, written consent to
14 the representation, "[w]ith few exceptions, disqualification
15 follows automatically, regardless of whether the simultaneous
16 representations have anything in common or present any risk that
17 confidences obtained in one matter would be used in the other."
18 SpeeDee Oil Change, 20 Cal. 4th at 1147. Accord Flatt v. Superior
19 Court, 9 Cal. 4th 275, 284 (1994) ("Indeed, in all but a few
20 instances, the rule of disqualification in simultaneous
21 representation cases is a *per se* or 'automatic' one"). This
22 prohibition against simultaneous representation extends to all
23 members of the firm, under the rationale "that attorneys, working
24 together and practicing law in a professional association, share
25 each other's, and their clients', confidential information."
26 SpeeDee Oil Change, 20 Cal. 4th at 1153-54.
27     Because motions to disqualify are often tactically
28 motivated, they are strongly disfavored and, accordingly, are

subject to "particularly strict judicial scrutiny." <u>Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted). The party seeking disqualification bears the burden of establishing the existence of a disqualifying conflict of interest by a preponderance of the evidence. <u>H.F. Ahmanson & Co. v. Salomon Bros., Inc.</u>, 229 Cal. App. 3d 1445, 1452 (1999).

**III. ANALYSIS**

As many of the relevant acts and communications are protected by the attorney-client privilege, the court will refer to the evidence on which it has based its decision in a more oblique fashion than normal.

> **A. Despite the existence of a potential conflict, Squire Patton failed to obtain Hofioni's consent to common representation at the outset of litigation.**

This case was filed on August 26, 2013. That Hofioni and the Non-Hofioni Defendants had a potential conflict of interest should have been apparent from the outset. Yet Squire Patton failed to secure Hofioni's written consent to the common representation until January 27, 2014. (Hofioni Decl. ¶ 9, ECF No. 53.) In so doing, Squire Patton violated California Rule of Professional Conduct 3-310(C)(1), which provides, in pertinent part, that "[a] member shall not, without the informed written consent of each client . . . [a]ccept representation of more than one client in a matter in which the interests of the clients potentially conflict." A delay of a few days or weeks might be excusable given the circumstances of this case: Hofioni had

started his job with the Entity Defendants scarcely a month before its filing, and plaintiff had just moved for a complex temporary restraining order and preliminary injunction. But a five-month delay, in the court's view, is a sufficient breach of the Rules of Professional Conduct to "automatically" warrant disqualification. SpeeDee Oil Change, 20 Cal. 4th at 1147.

### B. Despite the existence of an actual conflict, Squire Patton continued to represent all of the defendants without Hofioni's written consent.

Confidential emails submitted to the court reveal that, at some point between January 7 and January 15, 2014, Squire Patton should have been aware that an actual conflict of interest had arisen between Hofioni and the Entity Defendants. But subsequent emails show that Squire Patton failed to verify whether it had obtained Hofioni's consent to the common representation until January 23 or 24, 2014. By so delaying, Squire Patton failed to comply with California Rule of Professional Conduct 3-310(C)(2), which provides, in pertinent part, that "[a] member shall not, without the informed written consent of each client . . . continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." While eight to seventeen days' delay may – *may* – be excusable under some circumstances (*e.g.*, an omission by a sole practitioner facing a personal emergency and the press of multiple cases), no such exculpatory circumstances are present here. Squire Patton is a multinational, highly-sophisticated entity and ought to have processes in place to prevent the sorts

of omissions implicated herein. That the firm became aware of an actual conflict and failed to promptly verify that it had Hofioni's consent in place is sufficient grounds for disqualification as a breach of the Rules of Professional Conduct and the broader duty of loyalty.

Squire Patton may object that its failure was merely a clerical oversight rather than any sort of deliberate tactic or omission. A federal bankruptcy case, In re Jaeger, 213 B.R. 578, 586-87 (C.D. Cal. 1997), is instructive in this regard. The court therein disqualified the law firm of Greenberg Glusker Fields Claman & Machtinger LLP for failing to obtain written, informed consent from multiple defendants before representing them in litigation. In reaching this decision, the court noted:

> The beginning of an attorney's file for a new matter should contain three types of documents to implement these rules. First, there should be the engagement letter, which spells out the scope of the representation that the attorney is to undertake for the client. Second, there should be a memo disclosing the results of the internal conflicts check at the law firm. Third, if the engagement involves the representation of more than one client, the file should contain the informed written consent of each client in the engagement. These documents should be at the beginning of the file, so that there is never any doubt that they have been obtained and preserved, in case any question should later arise about them.

The standard of practice outlined here is sound, and the requirements of California Rule of Professional Conduct 3-310(C)(1) and (2) are plain; they ought to be followed by attorneys in every conceivable practice setting. Squire Patton's

failure to follow them, and its concurrent representation of clients with potential, and then actual, conflicts warrants disqualification.

### C. Squire Patton failed to provide Hofioni with adequate disclosures when it ultimately sought his consent.

Squire Patton belatedly sought Hofioni's consent by prompting him via email for his signature on January 24 and 27. (Hofioni Decl. ¶ 9, ECF No. 53.) Yet the firm did not supplement the written disclosures that it had provided to him at the commencement of litigation. The relevant Rule of Professional Conduct defines "disclosure" as "informing the client or former client **of the relevant circumstances** and **of the actual and reasonably foreseeable adverse consequences** to the client or former client." Cal R. Prof. Conduct 3-700(A)(1) (emphasis added). Courts generally interpret these phrases to mean written disclosures of the sort that Squire Patton initially sent Hofioni. See, e.g., Sharp v. Next Entertainment, Inc., 163 Cal. App. 4th 410, 431 (2008) ("The written waivers demonstrated that the Guild and plaintiffs understood and acknowledged the presence of all purported conflicts of interests and the material risks of continued representation by the Rothner firm. Plaintiffs and the Guild made rational choices armed with full disclosures and provided informed written consent to the simultaneous representation by the Rothner firm.") Such disclosures are entirely appropriate at the commencement of litigation, when a conflict is one among many possibilities that could arise. But the litigation herein had progressed for five months. The

1 "relevant circumstances" and/or "actual and reasonably
2 foreseeable adverse consequences" for Hofioni included Squire
3 Patton's imminent termination of its representation of him. While
4 the earlier disclosures contemplate termination, they do so as an
5 *ex ante* possibility rather than as an imminent certainty.

6 There appear to be no cases directly on-point, but the
7 California appellate opinion cited above approvingly quotes 1
8 Geoffrey C. Hazard & W. William Hodes, The Law of Lawyering §
9 10.4 (3d ed. 2008 supp.) for the proposition that "The concept of
10 informed consent is a familiar one. It signifies that a person
11 making an important decision does so on the basis of adequate
12 knowledge of the facts and an awareness of the consequences of
13 decision." Sharp, 153 Cal. App. 4th at 430. Squire Patton knew
14 of, but failed to disclose, the existence of an actual, existing
15 conflict between Hofioni and the Non-Hofioni Defendants. As such,
16 Hofioni lacked "adequate knowledge of the facts" and "an
17 awareness of the consequences" when he gave his written consent
18 to common representation in late January.

19 The court does not reach the question of what disclosures
20 would have been adequate under these circumstances. Complex
21 issues obviously arise from the firm's duty of confidentiality to
22 the Non-Hofioni Defendants – which only reinforces the importance
23 of having obtained Hofioni's consent at the outset. But it is
24 sufficiently clear that presenting Hofioni with disclosures more
25 appropriate to the commencement of litigation, and failing to
26 supplement these disclosures in any way, was insufficient to meet
27 the standards of the Rules of Professional Conduct and the firm's
28

broader duty of loyalty to Hofioni. Under these circumstances, disqualification of Squire Patton is, again, warranted.

**IV. CONCLUSION**

The court does not reach this conclusion lightly. Disqualification motions are a low-cost means for unscrupulous litigants to inflict maximum confusion on their opponents, and as such, are strongly disfavored. That said, attorneys bear a duty of undivided loyalty to *each* of their clients, regardless of any particular client's contribution to the bottom line. This principle is of central importance to the proper, ethical functioning of the profession. As outlined above, Hofioni has borne his burden of showing that Squire Patton violated this duty and the relevant Rules of Professional Conduct, justifying disqualification.

Also pending before the court is Hofioni's newly-filed motion for a temporary restraining order and a preliminary injunction enjoining the Entity Defendants from discontinuing the payment of attorney's fees and costs incurred by Hofioni in defending against plaintiff's claims herein. Hofioni has failed to demonstrate that he would suffer irreparable harm from non-issuance of the temporary restraining order. Moreover, given the confusion that disqualification will engender for the Non-Hofioni Defendants, it would be highly inequitable for the court to force these Defendants to brief the merits of the requested preliminary injunction while simultaneously locating new counsel and allowing that counsel to familiarize itself with the contours of the litigation to date. Finally, as the undersigned will be assuming inactive status on September 30, 2014, and his cases reassigned

to other judges, the issuance of such an injunction is more-properly the province of the judge who succeeds to this case. Having prevailed in this motion, the Wilke Fleury firm can decide for itself whether to bear the risk of continuing to represent Hofioni for a few more months until its motion may be reconsidered.

In light of the foregoing, the court hereby orders as follows:

[1] Hofioni's motion to disqualify Squire Patton as counsel for all defendants herein (ECF No. 62) is GRANTED.

[2] This matter is STAYED to permit the Non-Hofioni Defendants time to retain new counsel and allow that counsel to familiarize itself with this case. The Non-Hofioni Defendants are DIRECTED to file a status report no later than sixty (60) days from docketing of this Order. Upon this filing, the stay will be lifted.

[3] Squire Patton's motion to withdraw as counsel for Hofioni (ECF No. 50) is DENIED as moot.

[4] Wilke Fleury and Squire Patton are each DIRECTED, no more than seven (7) days after docketing of this order, to submit for the record every document that it had previously submitted to chambers via email in response to the Orders docketed at ECF Nos. 70 & 74. To this end, documents should be emailed to ApprovedSealed@caed.uscourts.gov. These

1      documents will thereafter remain under seal and accessible
2      only to necessary court personnel.
3
4      [5] Hofioni's application for a temporary restraining order
5      and motion for a preliminary injunction (ECF No. 77) are
6      both DENIED without prejudice to their renewal upon the
7      lifting of the stay herein.
8      IT IS SO ORDERED.
9      DATED:   July 25, 2014.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

15